IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EUROOPTIC LTD., | No. 4:24-CV-02150 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| W.L. GORE & ASSOCIATES, INC., d/b/a/ SITKA GEAR, | |
| Defendant. | |

**MEMORANDUM OPINION**

MAY 2, 2025

## I. BACKGROUND

On December 13, 2024, Plaintiff EuroOptic Ltd. ("EuroOptic") filed a three-count Complaint alleging claims for breach of contract, unjust enrichment, and promissory estoppel against Defendant W.L. Gore & Associates, Inc. ("W.L. Gore").[1] W.L. Gore moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) on January 8, 2025.[2] Before the Court disposed of this motion, Defendant filed a Motion for Sanctions on February 14, 2025 under Federal Rule of Civil Procedure 11.[3] EuroOptic then filed a Motion to Strike the Motion for Sanctions under Federal Rules of Civil Procedure 12(f) and (g).[4] These motions are

---

[1] Compl., Doc. 1.
[2] Motion to Dismiss, Doc. 6.
[3] Motion for Sanctions, Doc. 15.
[4] Motion to Strike, Doc. 16.

now ripe for disposition. Due to the procedural constraints of Rule 12(b)(6), the Court will first dispose of the Motion to Dismiss before turning to the remaining motions.

## II.    MOTION TO DISMISS UNDER RULE 12(b)(6)

### A.    Rule 12(b)(6) Standard

Under Federal Rule of Civil Procedure 12(b)(6), courts dismiss a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Following the landmark decisions of *Bell Atlantic Corp. v. Twombly*[5] and *Ashcroft v. Iqbal*,[6] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[7] The United States Court of Appeals for the Third Circuit has instructed that "[u]nder the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps": (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) "assume the[] veracity" of all "well-pleaded factual allegations" and then "determine whether they plausibly give rise to an entitlement to relief."[8]

---

[5]  550 U.S. 544 (2007).
[6]  556 U.S. 662 (2009).
[7]  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).
[8]  *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).

### B. Facts Alleged in the Complaint

#### 1. The Parties

EuroOptic "is an e-commerce company that specializes in selling high performance sports optic gear, firearms, and similar equipment."[9] W.L. Gore "is a multinational manufacturing company that manufactures . . . hunting and outdoor clothing and equipment under the 'Sitka Gear' brand name."[10]

Between 2016 and August 2024, the parties "had a dealership relationship in which EuroOptic purchased Sitka inventory from W.L. Gore and marketed and sold the inventory directly to consumers via EuroOptic's website and other outlets."[11] This relationship "made EuroOptic the world's largest dealer" of Sitka products.[12]

#### 2. The March 2024 Meeting

On March 21, 2024, members of W.L. Gore's Sitka brand[13] met with EuroOptic's owner, Alexander Roy, and Chief Executive Officer, Jeffrey Brooks, "to discuss an exclusive partnership with EuroOptic for all of W.L. Gore's Sitka products sold on the website Amazon.com ('Amazon')."[14] Roy specifically asked if these representatives were "authorized to enter into an agreement on behalf of W.L.

---

[9] Doc. 1 ¶ 7.
[10] *Id.* ¶ 8.
[11] *Id.* ¶ 9.
[12] *Id.*
[13] These individuals were Tim Dennis, the national sales leader, and Christian Mason, a product engineer. *Id.* ¶ 11.
[14] *Id.* ¶¶ 10-11.

Gore."[15] Roy received assurances from the national sales leader that it was his "job to fix what was broken and that his word would be honored by" Defendant.[16]

At this meeting, the parties "agreed that EuroOptic would become the exclusive seller of all Sitka products on Amazon for a period of no less than two years and EuroOptic would have brand registry rights to Sitka's inventory catalog on Amazon" ("the Agreement").[17] W.L. Gore also "terminated and revoked Amazon selling permission with all of the other sellers that sold Sitka products on Amazon," with an "effective date of termination" of January 1, 2025.[18] Under the Agreement, Plaintiff assumed responsibility for managing Sitka's Amazon store and Amazon Standard Identification Number ("ASIN") listings and providing customer service.[19] EuroOptic and W.L. Gore also agreed to cooperate on market analysis and research.[20] As consideration for this agreement, Plaintiff purchased $600,000 of "unsellable and otherwise worthless" Sitka inventory from W.L. Gore, with payment occurring in April 2024.[21]

---

[15] *Id.* ¶ 13.
[16] *Id.*
[17] *Id.* ¶ 14.
[18] *Id.* ¶ 12.
[19] *Id.* ¶ 15. ASIN listings help companies prevent unauthorized sales of their products on Amazon. *Id.*
[20] *Id.* ¶ 16.
[21] *Id.* ¶¶ 17-18.

### 3. EuroOptic's Subsequent Preparations

In anticipation of its new role, EuroOptic "upgrad[ed] its software, hir[ed] experienced personnel, upgrad[ed] its shipping and receiving capacity, and improv[ed] its storefront" by increasing the amount of space dedicated to Sitka.[22] To do so, Plaintiff incurred substantial costs and "ended a sublease that resulted in the loss of a tenant occupying in excess of 130,000" square feet.[23]

### 4. W.L. Gore's New Chief Executive Officer Terminates the Relationship

On July 17, 2024, the parties held a virtual meeting attended by Theresa Spangler, Defendant's new chief executive officer for the Sitka brand.[24] At this meeting, EuroOptic "expressed concerns about Sitka's business practices and other challenges."[25] Plaintiff also "provided insight into the disruptive nature of its primary competitors."[26] These concerns were meant to "further the parties' expanding commercial partnership as they embarked on the Amazon relationship and to start a productive dialogue that would protect and benefit both companies for years to come."[27] During this virtual meeting, EuroOptic "advised Sitka leadership

---

[22] *Id.* ¶ 19.
[23] *Id.* ¶ 20.
[24] *Id.*
[25] *Id.* ¶ 24.
[26] *Id.*
[27] *Id.*

that it believed that the business being assigned to EuroOptic was likely worth $60 million annually, rather than $12 million" as W.L. Gore had estimated.[28]

Plaintiff then received a letter from Spangler on August 12, 2024 that "stated that Sitka had terminated the dealer relationship with EuroOptic retroactively to August 8, 2024," due to an "unspecified new 'assessment and re-evaluation of [Sitka's] overall business direction.'"[29] EuroOptic believes Defendant was actually motivated by "its belated realization that the" business was "five times more valuable" than it initially believed.[30]

### 5. The Marketing and Return Credits

Finally, W.L. Gore "provides EuroOptic with marketing and returns credits to offset [its] costs and expenses related to promoting Sitka products and the return of Sitka goods."[31] Defendant "owes EuroOptic nearly $100,000 in returns credits" but refuses to pay them.[32]

### C. Analysis

W.L. Gore asserts EuroOptic has failed to plead sufficient facts to support its breach of contract, promissory estoppel, and unjust enrichment claims. Each of these claims is analyzed separately below.

---

[28] *Id.* ¶ 25.
[29] *Id.* ¶ 26.
[30] *Id.* ¶ 27.
[31] *Id.* ¶ 31.
[32] *Id.* ¶ 33.

### 1. Count One: Breach of Contract

#### a. Sufficiently Definite Terms

"Under Pennsylvania law, a breach of contract claim has three elements: '(1) the existence of a contract, (2) a breach of a duty imposed by the contract, and (3) damages.'"[33] Oral contracts may exist under Pennsylvania law, but the "party relying upon an alleged oral contract must prove that a mutual intent to be bound was manifested, even though it was not memorialized in writing."[34]

EuroOptic asserts that the parties "reached a binding oral contract."[35] This is nothing more than a legal conclusion. But that is not the end of EuroOptic's factual allegations. Plaintiff identified various terms of the Agreement including exclusivity, the minimum term, the services it is to provide, and the consideration provided. The Court must determine whether these terms render the oral contract sufficiently definite such that it can be enforced and a remedy may be provided in the event of a breach.

"An enforceable contract requires, among other things, that the terms of the bargain be set forth with sufficient clarity."[36] "The party relying upon an alleged oral

---

[33] *Philidor RX Servs. LLC v. Polsinelli PC*, 2023 WL 6290746, 2023 U.S. App. LEXIS 25499, at *6 (3d Cir. Sept. 27, 2023) (quoting *Sullivan v. Chartwell Inv. Partners, LP*, 873 A.2d 710, 716 (Pa. Super. Ct. 2005)).

[34] *Traction Tire, LLC v. Total Quality Logistics, LLC*, No. 19-5150, 2020 Wl 6044179, 2020 U.S. Dist. LEXIS 188791, at *19-20 (citing *Bennett v. Itochu Int'l Inc.*, Nos. 09-CV-1819, 09-CV-4123, 2012 U.S. Dist. LEXIS 119791, 2012 WL 3627404, at *16 (E.D. Pa. 2012)).

[35] Doc. 1 ¶ 14.

[36] *Lackner v. Glosser*, 892 A.2d 21, 31 (Pa. Super. Ct. 2006).

contract must do more than show 'preliminary negotiations or an agreement to enter into a binding contract in the future; to succeed, the party must prove that a mutual intent to be bound manifested, even though it was not memorialized in writing.'"[37]

"An agreement is sufficiently definite and will not fail for vagueness if the parties intended to make a contract and the terms provide a reasonably certain basis for a court to give an appropriate remedy."[38] "Where, however, there is no agreement or even a discussion as to any of the essential terms of an alleged bargain, such as time or manner of performance, or price or consideration, the 'agreement' is too indefinite for a party to reasonably believe that it could be enforceable in an action at law."[39] But "[t]he fact that an agreement omits an essential term, such as price, 'does not vitiate contract formation if the parties otherwise manifested their mutual assent to the agreement and the terms of that agreement are sufficiently definite.'"[40]

Defendant's attempt to argue the oral contract is insufficiently definite is unpersuasive. Plaintiff has identified most of the key terms of any contract, namely when the relationship is to commence,[41] the contract's minimum term, and the consideration supporting the Agreement. The missing terms identified by W.L. Gore

---

[37] *Ecore International, Inc. v. Downey*, 343 F. Supp. 3d 459, 489 (E.D. Pa. 2018) (quoting *Bennett v. Itochu Intern., Inc.*, Nos. 09-CV-1819, 09-CV-4123, 2012 WL 3627404, at *16 (E.D. Pa. Aug. 23, 2012)).

[38] *Dahar v. Grzandziel*, 599 A.2d 217, 220 (Pa. Super. Ct. 1991).

[39] *Id.*

[40] *Ecore International, Inc. v. Downey*, 343 F. Supp. 3d 459, 489 (E.D. Pa. 2018) (quoting *ATACS Corp. v. Trans World Communications, Inc.*, 155 F.3d 659, 667 (3d Cir. 1998)).

[41] The Court reaches this inference on the fact the canceled contracts were discussed at the March 2024 Meeting and the value of the Sitka brand, as alleged in the Complaint. Doc. 1 ¶¶ 12, 25.

do not cast enough doubt on the parties' intentions such that the contract is unenforceable, especially when many of these terms could be informed by the prior course of dealing under the non-exclusive distributorship arrangement.[42] Accordingly, I conclude that EuroOptic has alleged a sufficiently definite oral contract.

### b. The Statute of Frauds

Under Article 2 of the Uniform Commercial Code ("UCC"), the statute of frauds renders "a contract for the sale of goods for the price of $500 or more" unenforceable "unless there is some writing sufficient to indicate that that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought."[43] "Distribution agreements [such as this] are typically governed by the UCC as contracts for the sale of goods."[44] Due to this, Defendant argues that the oral contract, even when sufficiently definite, is unenforceable.

Although the oral contract contains provisions that relate to both goods and services,[45] the Court concludes that that the goods component of the oral contract

---

[42]  Brief in Support, Doc. 8 at 11.
[43]  13 Pa.C.S.A.§ 2201.
[44]  *Precision Indus. Equip. v. IPC Eagle*, No. 14-3222, 2016 WL 192601, 2016 U.S. Dist. LEXIS 5166, at *7-8 (E.D. Pa. Jan. 14, 2016) (collecting cases).
[45]  The Court is to apply a two-step test under Pennsylvania law. *Power Restoration Int'l, Inc. v. PepsiCo, Inc.*, No. 12-1922, 2015 WL 1208128, 2015 U.S. Dist. LEXIS 32415 (E.D. Pa. Mar. 17, 2015). The first step is satisfied as there is a significant service component in the contract. *Universal Atl. Sys. v. Honeywell Int'l Inc.*, 2018 WL 1757727, 2018 U.S. Dist. LEXIS 62022, (E.D. Pa. Apr. 12, 2018). As alleged, Plaintiff has secured the right to be the exclusive Amazon seller of Sitka products and has agreed to provide certain services for W.L. Gore, including managing the Amazon store, handling customer service, and managing the ASIN listings as

9

predominates, at least as currently pled. In reaching this conclusion, I am guided by "the purpose or essence of the contract[:]"[46] the distribution of Sitka products through Amazon. The services to be provided are incidental to Plaintiff's distributor role and inherently intertwined with the sale of goods online. As such, the agreed upon services cannot pull the oral contract outside the purview of the statute of frauds.

However, the alleged partial performance of the oral contract rescues this claim from dismissal at this juncture. EuroOptic tendered $600,000 to W.L. Gore for what EuroOptic characterized as worthless inventory, which Defendant accepted.[47] "[I]t is well settled that under Pennsylvania law where there is part performance of an indivisible contract, the entire contract is removed from the statute of frauds."[48] "Thus, where the party invoking the statute of frauds has benefited from partial performance, that party may be barred from invoking such a defense."[49] While W.L. Gore challenges EuroOptic's ability to connect this allegation to the purported oral contract, the Complaint specifically identified this payment as part of the consideration paid for the exclusive dealership. At this stage,

---

well as jointly performing market analysis and research for the Sitka brand. Given this conclusion, the Court then applies the predominate purpose test developed by Pennsylvania courts. *Id.*
[46] *Advent Sys. Ltd. v. Unisys Corp.*, 925 F.2d 670, 674 (3d Cir. 1991).
[47] Doc. 1 ¶¶ 17-18.
[48] *JML Indus. v. Pretium Packaging, LLC*, No. 3:04-cv-2552, 2005 WL 8168233, 2005 U.S. Dist. LEXIS 56427 (M.D. Pa. Jan. 14, 2005) (citing *Acierno v. New Castle Cty.*, 40 F.3d 645, 655 (3d Cir. 1994)).
[49] *Id.* (citing *In re Estate of Brojack*, 467 A.2d 1175, 1182 (Pa. Super. Ct. 1983)).

this is sufficient to enable this claim to survive; it remains to be seen whether EuroOptic will be able to ultimately prove this allegation.

### 2. Promissory Estoppel Claim[50]

"Under Pennsylvania law, a court may enforce a 'promise that is unsupported by consideration where (1) the promisor makes a promise that he reasonably expects to induce action or forbearance by the promisee, (2) the promise does induce action or forbearance by the promisee, (3) and injustice can only be avoided by enforcing the promise.'"[51] "These factors are strictly enforced to guard against the 'loose application' of promissory estoppel."[52]

#### a. Sufficiently Definite Terms

The Third Circuit has noted that "a broad and vague implied promise is insufficient to satisfy the first element."[53] Defendant argues that the promissory estoppel claim fails "for many of the same reasons [EuroOptic's] breach of contract claim does . . . ."[54] But that is not so; the allegations allow the Court to discern "the

---

[50] The Court notes that the statute of frauds does not serve as a bar to the promissory estoppel claim but acknowledges that it may ultimately limit Plaintiff's recovery to reliance damages in the absence of fraud depending on how the case develops. *See McCloskey v. NovaStar Mortg., Inc.*, No. 05-1162, 2007 WL 2407013, 2007 U.S. Dist. LEXIS 622297, at *32-33 (E.D. Pa. Aug. 21, 2007) (collecting cases).
[51] *Ankerstjerne v. Schlumberger, Ltd.*, 155 F. App'x 48, 51 (3d Cir. 2005) (quoting *Carlson v. Arnot-Ogden Mem'l Hosp.*, 918 F.2d 411, 416 (3d Cir. 1990)).
[52] *Pandit v. Temple Univ.*, No. 24-1475, 2025 WL 388818, 2025 U.S. Dist. LEXIS 19218, at *4 (E.D. Pa. Feb. 4, 2025) (quoting *Cornell Narberth, LLC v. Borough of Narbeth*, 167 A.3d 228, 239 (Pa. Commw. Ct. 2017)).
[53] *Id.* (citing *C&K Petroleum Prods., Inc. v. Equibank*, 839 F.2d 188, 192 (3d Cir. 1988)).
[54] Doc. 8 at 17.

intent of the parties with 'reasonable certainty.'"[55] As W.L. Gore has not presented any additional arguments that alter my earlier conclusion, I decline to dismiss Plaintiff's promissory estoppel claim on this ground.

### b. Reasonable Reliance

"To succeed on a promissory estoppel claim, the plaintiff must establish that he took action that 'amounted to a substantial change of position.'"[56] "The promisor is affected only by reliance which he does or should foresee, and enforcement must be necessary to avoid injustice. Satisfaction of the latter requirement may depend on the reasonableness of the promisee's reliance, on its definite and substantial character in relation to the remedy sought, on the formality with which the promise is made, on the extent to which the evidentiary, cautionary, deterrent and channeling functions of form are met by the commercial setting or otherwise, and on the extent to which such other policies as the enforcement of bargains and the prevention of unjust enrichment are relevant."[57] "The force of particular factors varies in different types of cases."[58] The Pennsylvania Supreme Court and the Third Circuit have used

---

[55] *Cohn v. Pa. State Univ.*, No. 19-2857, 2020 WL 2770684, 2020 U.S. Dist. LEXIS 92976, at *22 (E.D. Pa. May 28, 2020) (quoting *MRO Corp. v. Humana Inc.*, 383 F. Supp. 3d 417, 423 (E.D. Pa. 2019)).
[56] *Ankerstjerne*, 155 F. App'x at 51 (quoting *Kaufman v. Mellon Nat'l Bank and Trust Co.*, 366 F.2d 326, 332 (3d Cir. 1996)).
[57] Restatement (Second) of Contracts § 90, cmt. b (1981).
[58] *Id.*

these factors to evaluate whether the "reliance was unreasonable."[59] Defendant makes a barebones application of two of these factors, which I address below.

EuroOptic alleges it purchased $600,000 in worthless inventory from W.L. Gore "[a]s consideration for and as a condition of the Agreement," with this purchase occurring in early April 2024.[60] Plaintiff then "spent significant time, money, and resources" to upgrade its software and shipping capabilities, hire personnel, and improve its storefront, including by canceling a sublease to provide additional room for Sitka products.[61] Defendant asserts that these actions were unreasonable based upon a single conversation forming the basis of the oral contract, but this argument misreads the Complaint. This conversation forms the basis of the promise Plaintiff relied upon, but EuroOptic also alleged that it purchased over half-a-million dollars in what it alleges was worthless inventory as a condition of the Agreement, with payment tendered shortly after the conversation. Under these circumstances, it appears that EuroOptic reasonably relied upon the promise. That is the case even when the UCC provides that distributorship agreements can be terminated upon reasonable notification.

---

[59] *Massaro Ltd. Partnership (Park West Two) v. Baker & Taylor, Inc.*, 161 F. App'x 185, 188 (3d Cir. 2005) (quoting *Thatcher's Drug Store of West Goshen, Inc. v. Consolidated Supermarkets, Inc.*, 636 A.2d 156 (1994)).
[60] Doc. 1 ¶ 17.
[61] Doc. 1 ¶¶ 19-20. W.L. Gore also asserts that Plaintiff does not identify the actions it needed to undertake to perform its contractual obligations. These allegations are clearly the preparatory steps taken by EuroOptic.

Also relevant to the Court's analysis is the "formality with which the promise is made."[62] EuroOptic has alleged that Plaintiff's owner and chief executive officer met with "senior representatives of W.L. Gore's Sitka brand" including the national sales leader and a product engineer.[63] The meeting also took place at EuroOptic's headquarters in Montoursville, Pennsylvania in the context of an eight-year dealership relationship between the parties.[64] Although EuroOptic's owner questioned whether the visiting representatives "were authorized to enter into an agreement," the overall formality of the situation suggests Plaintiff's reliance was reasonable.[65] As these were the only factors challenged by W.L. Gore, I will not dismiss the promissory estoppel claim.

### 3. Unjust Enrichment Claim

"A claim of unjust enrichment requires the plaintiff to 'show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that would be unconscionable for the party to retain without compensating the provider.'"[66] "[T]he most significant element of the doctrine is whether the enrichment of the defendant is unjust. The doctrine does not apply simply because the defendant may have benefited as a result of the actions of the plaintiff."[67]

---

[62] Restatement (Second) of Contracts § 90, cmt. b (1981).
[63] Doc. 1 ¶ 11.
[64] *Id.* ¶ 10.
[65] *Id.* ¶ 13.
[66] *Ankerstjerne*, 155 F. App'x at 52 (quoting *Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 999 (3d Cir. 1987)).
[67] *Styer v. Hugo*, 619 A.2d 347, 350 (Pa. Super. Ct. 1993).

EuroOptic's unjust enrichment claim is premised on two benefits retained by W.L. Gore: $100,000 worth of credit payments and the $600,000 exchanged for the worthless inventory.

### a.    The Credits

"Pennsylvania law bars unjust enrichment claims when a contract – express or implied – governs the parties' relationship."[68] But "the Federal Rules of Civil Procedure permit such claims to be pleaded in the alternative where . . . the existence or applicability of a contract is in dispute."[69]

As part of the non-exclusive distributorship agreement, W.L. Gore provided "marketing and returns credits to offset EuroOptic's costs and expenses related to promoting Sitka products and the return of Sitka goods."[70] It is not explicitly alleged that a contract governed the parties' relationship during this period, but that is the most reasonable inference given Defendant "terminated and revoked Amazon selling permission with all of the other sellers," effective January 1, 2025.[71] Without any argument from EuroOptic questioning the validity of this contractual relationship, I will dismiss this portion of the unjust enrichment claim but allow Plaintiff the opportunity to amend its Complaint.[72]

---

[68] *Hickey v. Univ. of Pittsburgh*, 81 F.4th 301, 315 (3d Cir. 2023) (citing *Hershey*, 828 F.2d at 999).
[69] *Id.* (citing FED. R. CIV. P. 8(d)(3)).
[70] Doc. 1 ¶ 31.
[71] *Id.* ¶ 12.
[72] *Grudkowski v. Foremost Ins. Co.*, 556 F. App'x 165, 170 n.8 (3d Cir. 2014) ("Pleading in the alternative under Fed. R. Civ. P. 8(d)(2) is, of course, permissible . . . but pleading both breach

### b. The Worthless Inventory

Much like the credits, Plaintiff has pled a contractual relationship for the worthless inventory. However, the statute of frauds operates to cast doubt on whether this oral contract will ultimately be enforceable, as I have previously discussed. Therefore, maintaining this claim in the alternative is acceptable at this stage of the proceedings.

W.L. Gore also asserts that Plaintiff received the benefit it paid $600,000 for: the worthless inventory. But this argument misunderstands the allegations in the Complaint. It is not merely alleged that EuroOptic purchased the worthless inventory for $600,000; instead, Plaintiff claims to have purchased this useless inventory for a significant sum as the consideration for the Agreement. Accordingly, Defendant has "either wrongfully secured or passively received a benefit that would be unconscionable for the party to retain without compensating the provider."[73]

### III. MOTION FOR SANCTIONS UNDER RULE 11

W.L. Gore has also moved under Federal Rule of Civil Procedure 11 for sanctions. "Rule 11 is an important tool to deter litigation misconduct."[74] "Rule 11(b) provides that when a lawyer 'present[s] to the court a pleading, written motion,

---

of contract and unjust enrichment is plausible only when the validity of the contract itself is disputed, making unjust enrichment a potentially available remedy").

[73] *Ankerstjerne*, 155 F. App'x at 52.
[74] *Wharton v. Superintendent Graterford SCI Phila. Dist. Attorney's Off.*, 95 F.4th 140, 147 (3d Cir. 2024).

or other paper,' she is 'certif[ying] that to the best of [her] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support.'"[75] "[A] court may impose sanctions 'on any attorney, law firm, or party that violate[s] [Rule 11(b)] or is responsible for the violation.'"[76]

"The lodestar of Rule 11 is thus reasonableness, not bad faith. Unlike sanctions under a court's inherent power, Rule 11 'imposes an objective standard of reasonable inquiry which does not mandate a finding of bad faith.'"[77] "So lawyers can be sanctioned for objectively unreasonable conduct—in a word, negligence."[78] "'Rule 11 also imposes an implied 'duty of candor,' which attorneys violate whenever they misrepresent the evidence supporting their claims. Thus, a court may sanction attorneys under Rule 11(b)(3) for factual assertions they know—are false or wholly unsupported.'"[79]

In support of their respective positions, the parties have submitted to the Court various documents concerning the merits of Plaintiff's claims and the adequacy of its initial investigation. Despite W.L. Gore's attempt to argue otherwise, the record is nebulous at best as certain aspects contradict EuroOptic's allegations whereas

---

[75] *Id.* (quoting FED. R. CIV. P. 11(b)) (emphasis removed).
[76] *Id.* (quoting FED. R. CIV. P. 11(c)(1)).
[77] *Id.* (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 47 (1991)).
[78] *Id.* (citing *Martin v. Brown*, 63 F.3d 1252, 1264 (3d Cir. 1995); *Jenkins v. Methodist Hosps. Of Dall., Inc.*, 478 F.3d 255, 264 (5th Cir. 2007)).
[79] *Id.* (quoting *King v. Whitmer*, 71 F.4th 511, 521 (6th Cir. 2023)).

others lend credence to the existence of the Agreement. This motion is therefore premature,[80] with discovery needed to understand the veracity of Plaintiff's allegations. W.L. Gore's request for oral argument reinforces this conclusion. As such, I deny this motion without prejudice. Should it prove appropriate, Defendant may reassert this motion at a later time.

## IV. MOTION TO STRIKE UNDER RULE 12

As the parties have fully briefed the Rule 11 Motion and the Court has now disposed of it, the Motion to Strike is now moot.

## V. CONCLUSION

Defendant's Motion to Dismiss is granted in part and denied in part; the Motion for Sanctions is denied without prejudice, and the Motion to Strike is denied as moot. Plaintiff will be provided leave to amend should it so choose.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[80] *E.g.*, *Lauto v. Dover Public Sch. Dist.*, No. 21-cv-18246-SDW-ESK, 2023 WL 7895892, at *2 (D.N.J. Nov. 16, 2023).